# EXHIBIT A

| | |
|---|---|
| District Court, County of Denver<br>State of Colorado<br><br>1437 Bannock Street<br>Denver, Colorado 80202<br><hr><br>**Plaintiff:** Arthur Richey<br><br>v.<br><br>**Defendant(s):** DaVita Inc.<br><hr>Attorney for Plaintiff:<br>Name:    Ragab Law Firm, P.C.<br>           Sami M. Ragab, Esq.<br>Address:  1630 Welton St. #700<br>           Denver, CO 80202<br>Phone No.: (303) 564-7313<br>Atty. Reg. #: 49537<br>sami@ragablawfirm.com | DATE FILED: July 14, 2023 3:46 PM<br>FILING ID: C7481278A400D<br>CASE NUMBER: 2023CV32066<br><br><br><br>▲**COURT USE ONLY**▲<br><hr>Case No.:<br><br><br>Division: |
| **COMPLAINT** ||

Plaintiff Arthur Richey, by and through his attorney, Ragab Law Firm, P.C., for its claim against Defendant states as follows:

## PARTIES

1. Plaintiff Arthur Richey ("Richey") is an individual whose resides in Oklahoma.
2. Defendant DaVita Inc. ("DaVita") is a Florida limited liability company with a principal address Of 2000 16th Street, Denver, CO 80202.

## JURISDICTION AND VENUE

3. Plaintiff incorporates by reference all paragraphs in this Complaint as though set forth separately herein.
4. Jurisdiction and Venue are proper in this court under C.R.C.P. 98(c) because the matter arose in Denver County, Colorado and Defendant conducts business in that county.

## FACTUAL ALLEGATIONS

(Page 1 of 10)

5. Plaintiff incorporates by reference all paragraphs in this Complaint as though set forth separately herein.

6. On or around January 22, 2015, Plaintiff entered into an Employment Agreement (the "Agreement") with DaVita as the Director of the DaVita Development Program.

7. Plaintiff was extremely successful in his position and was regularly praised for his work.

8. Eventually, Plaintiff was promoted to Senior Director of the DaVita Development Program and continued to be praised for generating one of the most successfully programs at DaVita.

9. Prior to the two alleged incidents, Plaintiff had never been written up or disciplined in any manner for his performance at DaVita.

10. Plaintiff travelled for DaVita almost every single week, never took a sick day in his entire tenure with the company, and never used all of his vacation days because he cared so much about the success of the program and took high regard for his duties as the Senior Director of the program.

**The First Incident: Religious Discrimination**

11. On or around November 1, 2021, the Plaintiff was reprimanded on the basis of religious harassment towards another employee, Amy Books.

12. The claim made by Ms. Books was that she felt uncomfortable with the Plaintiff asking her the simple question, "Are you a Christian?"

13. According to an article published by DaVita:
    a. "The Week of Belonging is a forum for teammates to have meaningful conversations around belonging. During this celebration, Nov. 1–6, all teammates are encouraged to focus on Diversity & Belonging (D&B) by sharing more about themselves, participating in activities to deepen our connections and exploring what it means to really belong."

14. During the Week of Belonging: "We will focus on three themes during the week:
    a. "We Belong" to embrace the individual perspectives we each bring
    b. "I Stand With You" to emphasize the importance of respect and supporting one another

    c.  "Forward Together" to celebrate the unity and resiliency of our teammates during the past year."

15. Additionally, "Part of that strength comes from our Village's diversity—each of us bringing unique backgrounds and uniting under a shared purpose to care for each other with the same intensity in which we care for our patients."

16. It is common knowledge that the bible contains significant text related to belonging, working together, and unity. These themes encompass everything that the Week of Belonging attempts to provide for DaVita employees.

17. It appears as though DaVita was inclusive of all team members beliefs, except for the Plaintiff, because he was disciplined for simply asking this question to understand whether his teammate would take offense to a verse being read from the bible to open up the Week of Belonging.

18. DaVita did not thoroughly investigate this claim, because such an investigation would reveal that harassment is defined as "A course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose" or "Words, gestures, and actions which tend to annoy, alarm and abuse (verbally) another person." *See* Black's Law Dictionary.

19. It is undisputed that there only existed one incident which led to the disciplinary action.

20. This information was provided to DaVita in an appeal that was filed by the Plaintiff, which was ignored by DaVita.


**The Second Incident: Allegation of Sexual Harassment**

21. On or around October 2022, while at Genesis Wide, the Plaintiff noticed that certain male teammates would flirt with Ms. Pagnano.

22. Our client was concerned about her possible her discomfort when these men would place their hand on her lower back or shoulder as they engaged in conversation.

23. As her superior and her elder, the Plaintiff wanted to ensure that she felt safe in the workplace and knew that she could always report any sexual harassment through the proper channels.

24. Trying to ease into the conversation, he informed her that due to her appearance, she may be approached by other men in the workplace and if she ever felt uncomfortable, she should report any incidents to the Plaintiff, another supervisor, or People's Services.

25. The conversation was brief and appeared to go well. In response, Ms. Pagnano asked if the Plaintiff if DaVita had a no retaliation policy. Our client unequivocally stated that DaVita has a firm non-retaliation policy for any report that is filed.

26. Ms. Pagnano thanked the Plaintiff for his support.

27. Our client had previously informed Ms. Pagnano that she was being coached to replace the Plaintiff's position and that when he left the company, she could expect the promotion and substantial salary increase.

28. Following the conversation, the Plaintiff was reported for sexual harassment by Ms. Pagnano.

29. The investigator directly told the Plaintiff that they had spoken to all of the employees that regularly interacted with the Plaintiff to determine the merits of the sexual harassment claim.

30. Plaintiff spoke to his teammates and discovered that few of them had been contacted by the investigator.

31. Importantly, it must be noted that Ms. Pagnano was informed by the Plaintiff that she was in the process of being coached to replace him as the Senior Director of DDP and it was expected that once he retired, which had previously been announced, that she would step into his role which would include a substantial promotion and compensation increase.

32. Months prior to this incident, the Plaintiff had already announced his retirement and upon reaching the date of his retirement, he would have received significant additional compensation, including, his long-term incentive award of 2,343 DVA shares, his 2022 bonus of approximately $65,000.00-$75,000.00, and his continued compensation through May 31, 2023.

33. By choosing to terminate the Plaintiff DaVita saved over $250,000.00 between equity and bonus compensation.

**The Third Incident: Age Discrimination and Colorado Wage Act Violations**

34. On or around June 22, 2022, Vice President Peter Berkowitz informed the Plaintiff that he was "too old" to be promoted to a Vice President position, so he needed to begin his transition out of the organization.

35. At the time, Plaintiff was 70 years old.

36. Left with no alternative, the Plaintiff understood that he was being forced out of the company due to his age.

37. The Plaintiff entered into an agreement to work no more than 20 hours per week in exchange for 50% of his base compensation.

38. The agreement stipulated that the Plaintiff would not engage in new projects, and he would be focused on selling DaVita's completed projects.

39. Within two weeks, the Plaintiff was instructed by Mr. Berkowitz to take on new projects and ultimately was working the same number of hours as he had previously, while still being paid for part-time work.

40. The Plaintiff expressed his concerns about his pay, but no changes were made until he was ultimately terminated based on his age and request for unpaid wages on October 21, 2022.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

41. Plaintiff incorporates by reference all paragraphs in this Complaint as though set forth separately herein.

42. Plaintiff and DaVita entered into a valid Employment Agreement whereby DaVita had contractual duties and obligations to the Company. The Agreement stipulated that Plaintiff would reduce his hourly obligations to no more than 20 hours per week in exchange for 50% of his base compensation.

43. Plaintiff and DaVita completed their obligations for the first couple weeks, until DaVita requested that he work more hours.

44. DaVita breached the Agreement by failing abide by the new terms of the Agreement and failing to increase Plaintiff's compensation in accordance with the request to increase hours worked.

45. Pursuant to the Agreement, Plaintiff was to be compensated for his hours worked on a proportionate basis to his salary immediately prior to the agreement on or around June 22, 2022.

46. In reliance on DaVitas' promises, Plaintiff performed his obligations under the Agreement.

47. DaVita breached his contractual promises to compensate the Plaintiff.

48. Plaintiff was harmed by not receiving the agreed upon compensation as required by the Employment Agreement in an amount to be proven at trial.

49. Plaintiff has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### Wrongful Termination

50. Plaintiff incorporates by reference all paragraphs in this Complaint as though set forth separately herein.

51. Plaintiff was employed by the Defendant.

52. Plaintiff was terminated because he refused to forego the exercise of a job-related legal right or privilege and because of his age.

53. The Plaintiff had a right to be fairly compensated in accordance with the terms of the Employment Agreement. The right to be duly compensated for work performed is a protected right under the Colorado Wage Act.

54. Age is a protected status under C.R.S. § 24-34-402.

55. That right to be paid is protected under Colorado law, "which has been acknowledged to be an issue of major public and economic importance in Colorado." Hoyt v. Target Stores, Div. of Dayton Hudson Corp., 981 P.2d 188, 191 (Colo. App. 1998).

56. Plaintiff was terminated in retaliation for his request to be compensated for the hours he worked and as a result of his age.

57. The Plaintiff suffered extensive damages as a result of DaVita's Wrongful Termination in an amount to be proven at trial.

### **THIRD CLAIM FOR RELIEF**

### **Violations of the Colorado Wage Act (C.R.S. 8-4- 101, et. seq)**

58. Plaintiff incorporates by reference all paragraphs in this Complaint as though set forth separately herein.

59. DaVita is an Employer and Plaintiff is an Employee, as defined in the Colorado Wage Act.

60. Plaintiff worked as an employee of Defendant from January 22, 2015 to October 21, 2022.

61. Defendant did not compensate Plaintiff for his full-time hours as an employee.

62. Plaintiff sent a timely and formal demand for payment of wages to Defendants on February 9, 2023, to which a response letter was provided by its counsel on February 21, 2023.

63. Payment was due within 14 days of receipt of the wage demand, which would have been February 23, 2023.

64. Rather than paying Plaintiff his wages, Defendant denied liability and refused to compensate Plaintiff.

65. Defendant has willfully failed to tender payment of the wages owed to Plaintiff, thereby rendering Defendant in violation of the Colorado Wage Act.

66. Plaintiff has incurred damages in an amount to be determined at trial, but no less than the amount of compensation due and owing to him, including the statutory penalty (see C.R.S. § 8-4-109(3)), plus attorney fees. Plaintiff has been significantly damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Violations of the Colorado Anti-Discrimination Act (C.R.S. 24-34-401, et. seq)

67. Plaintiff incorporates by reference all paragraphs in this Complaint as though set forth separately herein.

68. The Colorado Anti-Discrimination Act (CADA), Colorado Revised Statutes § 24-34-401, prohibits discrimination on the basis of age.

69. DaVita is an Employer and Plaintiff is an Employee, as defined in CADA.

70. Age Discrimination:

    a. DaVita, by informing him that he would not be eligible for a promotion based on his age and ultimately terminating Plaintiff's employment based on his age, has violated the provisions of CADA.

    b. Upon information and belief, younger employees, with less experience and qualifications, were retained in similar positions.

    c. Plaintiff believes, and therefore avers, that his age was a determining factor in denying his ability to be considered for a promotion and ultimately his termination.

71. Religious Discrimination:

    a. Plaintiff practices the Christian faith.

    b. Plaintiff was written up and disciplined for asking another employee if they shared the same faith.

    c. DaVita harassed the Plaintiff by creating a hostile work environment based on his expression of his faith.

    d.   A complaint was filed with DaVita which was not reasonably investigated and ultimately was ignored.

72. As a direct and proximate result of DaVita's actions, Plaintiff has suffered loss of income, emotional distress, humiliation, and other damages.

### FIFTH CLAIM FOR RELIEF
### Unjust Enrichment

73. Plaintiff incorporates by reference all paragraphs in this Complaint as though set forth separately herein.

74. Plaintiff and DaVita had express agreements that governed the Employment relationship.

75. Plaintiff completed services that required DaVita to provide compensation as agreed upon.

76. DaVita received and retained the benefit of Plaintiff's.

77. The Defendant was contractually obligated to compensate Plaintiff in accordance with the terms of the Employment Agreement.

78. The Defendant failed to compensate Plaintiff for his services as agreed.

79. Justice, fairness, and equality would be offended if the Defendant was not required to compensate Plaintiff for the investment and services he completed.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. Award Plaintiff his contractually agreed compensation;

2. Back pay and lost benefits;

3. Front pay and future lost benefits;

4. Compensatory damages for emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses;

5. Punitive damages;

6. Award Plaintiff pre-judgment and post-judgment interest at the highest lawful rate;

7. Award Plaintiff reasonable attorneys' fees, as well as the costs of this action; and

8. Award such other and further relief as this Court deems just and proper.

Respectfully submitted this 26th day of May 2023.

RAGAB LAW FIRM, P.C.

*/s Sami M. Ragab*

Sami M. Ragab, Esq. #49537